CASS FARM CO. *v.* CITY OF DETROIT.[1]

| 124 | 433 |
|---|---|
| s83NW | 108 |
| a181US | 396 |
| a45Led | 914 |
| a21S0 | 644 |

| 124 | 433 |
|---|---|
| s83NW | 108 |
| d132 | 402 |

| 124 | 433 |
|---|---|
| 149 | ¹547 |

1. PUBLIC IMPROVEMENTS — STREET PAVING—FRONTAGE. ASSESSMENT—DUE PROCESS OF LAW.

A statute requiring the cost of paving streets to be assessed against abutting property according to the frontage does not violate the fourteenth amendment to the Constitution of the United States, prohibiting the taking of property without due process of law.[2]

2. SAME—BOARD OF PUBLIC WORKS—RIGHT TO TAKE INITIATIVE—ESTIMATE OF COST.

A city charter providing that, when any public improvement is proposed, the common council shall refer the matter to the board of public works, who shall proceed to examine the same, and report thereon to the council, "giving detailed estimates of the costs" thereof, and making such recommendation as it may deem expedient, is sufficiently complied with where the board, taking the initiative, sends a recommendation to the council that a street be paved, with a lump-sum estimate of the cost, and the city engineer makes a detailed estimate of the cost, which is laid before the council before the contract is approved.

3. SAME—ADVERTISEMENT—OPENING BIDS.

Though a city ordinance provides that advertisements for bids for public improvements shall specify a time and place when and where such bids shall be opened, at which time and place such bids shall be opened by the board of public works in the presence of such persons as shall choose to attend, and though the advertisement for a certain improvement merely recited that sealed proposals would be received at the office of the board of public works till a certain hour, this will not invalidate the proceedings and the assessment for such improvement; the bids having, in accordance with the custom of the board, been opened by them at their office at the hour specified for the closing of bids, and it having been in public, and in the presence of those who tendered bids.

---

[1] Rehearing denied October 16, 1900. Appealed to United States Supreme Court, and decision of this court affirmed. See 21 Sup. Ct. 644.

[2] As to the validity of frontage assessments, see note to *Davis* v. *City of Litchfield*, (Ill.) 21 L. R. A. 563.

124 MICH.—28.

4. SAME—DELAY IN COMPLETION—PENALTY—FAILURE TO IMPOSE
  —EFFECT ON ASSESSMENT.
     One assessed for paving taxes cannot defeat the collection of
       the assessment by setting up a provision of the contract
       under which the paving was done, requiring the work to be
       completed by a specified date under a prescribed penalty for
       each day's delay, and showing that, in the settlement with the
       contractor, no deduction was made for his delay in completing
       the work; since the penalty clause has no relation to the
       assessment, and is not intended for the benefit of persons
       assessed.

Appeal from Wayne; Rohnert, J.  Submitted April
12, 1900.  Decided June 5, 1900.

Bill by the Cass Farm Company, Limited, and others,
against the city of Detroit and others, to restrain the col-
lection of a paving tax.  From a decree for complainants,
defendants appeal.  Reversed.

*Russel & Campbell*, for complainants.

*C. D. Joslyn*, for defendants.

LONG, J.  This bill was filed to enjoin the city of
Detroit from paving a portion of Second avenue, and to
have the proceedings taken with reference to said paving
declared void, and the collection of assessments enjoined.
The grounds of relief stated in the bill, in the amended
bill, and in the supplemental bill are:

1. That the provisions of the charter and of the paving
ordinances of the city, in so far as the same provide for an
assessment of the cost of paving upon the abutting prop-
erty in proportion to the frontage of such property, are
in violation of the Constitution of the United States and
the amendments thereof, and therefore null and void.

2. That no detailed estimate of the cost of the proposed
improvement had been furnished to the common council
by the board of public works, as required by section 12,
chap. 15, of the charter of the city.

3. That the advertisement for bids did not specify a
time and place when and where the bids were to be opened
in the presence of such persons as might choose to attend,

as required by chapter 32, § 5, of the revised ordinances of the city of Detroit.

4. That the board of public works and the common council failed to comply with the requirements of sections 5, 6, and 7 of chapter 32 of the revised ordinances of the city.

5. That the work could not be completed within the time provided in the contract, and required by section 33 of chapter 11 of the charter of the city.

6. That substantially all of the work was done after the time named in the contract, and after the time limited by the charter of the city of Detroit for doing the work, and that no extension of time had been procured, authorizing the continuance of the contract after November 1st.

7. That sections 8 and 9 of chapter 32 of said ordinances, directing the manner in which the assessment roll should be delivered to the board of assessors, had not been complied with; the assessment roll not having been delivered to the board of assessors until after the completion of the work under the contract.

8. That the board of public works had accepted the work without deducting the penalty, provided by the contract, of $25 per day for delay, in case of a delay beyond the 1st of November.

It appears that the paving has been fully completed, and the work accepted by the city.

1. It is contended that an inflexible rule which requires the assessments in all cases to be according to the frontage, area, or otherwise, regardless of the circumstances of each particular case, is but an arbitrary exaction, and therefore unconstitutional. It is said that the rule laid down in *Village of Norwood* v. *Baker*, 172 U. S. 269 (19 Sup. Ct. 187), should be followed by this court. That was a street-opening case, and it was held that a law which provides for assessing against the abutting property, in proportion to the frontage, the entire cost of the opening, rests upon a basis which excludes any consideration of benefits, and violates the fourteenth amendment of the Constitution of the United States. That doctrine was laid down by this court in *Thomas* v. *Gain*, 35 Mich. 155 (24 Am. Rep. 535), but that was a sewer case. In paving

cases the rule has been settled in this State by many decisions that it is competent for the legislature to authorize the cost of paving streets to be assessed upon the abutting property according to frontage. *Williams* v. *Mayor, etc., of Detroit,* 2 Mich. 560; *Motz* v. *City of Detroit,* 18 Mich. 495; *Sheley* v. *City of Detroit,* 45 Mich. 431 (8 N. W. 52); *City of Kalamazoo* v. *Francoise,* 115 Mich. 554 (73 N. W. 801). It was said by Mr. Justice COOLEY in *Sheley* v. *City of Detroit, supra:*

"We might fill pages with the names of cases decided in other States which have sustained assessments for improving streets, though the apportionment of the cost was made on the same basis as the one before us. If anything can be regarded as settled in municipal law in this country, the power of the legislature to permit such assessments, and to direct an apportionment of the cost by frontage, should by this time be considered as no longer open to controversy. Writers on constitutional law, on municipal law, and on the law of taxation have collected the cases, and have recognized the principle as settled; and, if the question were new in this State, we might think it important to refer to what they say. But the question is not new; it was settled for us 30 years ago."

We should feel inclined to follow the opinion of the Supreme Court of the United States in *Village of Norwood* v. *Baker, supra,* inasmuch as it was based upon the fourteenth amendment of the Constitution of the United States, if that were a paving case; but that was a street-opening case, and, until that court shall pass upon the question in the exact form in which it is here presented, we shall feel bound to follow our own decisions.

2. Section 12 of chapter 15 of the charter provides that, when any public improvement is proposed, the common council shall refer the matter to the board of public works, who shall proceed to examine the same, "and shall, as soon as practicable, report thereon to the common council, giving detailed estimates of the costs of such works or improvements, if any costs there will be, and shall make such recommendation as said board of public

works may deem expedient." It appears that in the present case no resolution was adopted by the common council referring the matter to the board of public works, but that said board assumed the initiative, and sent a recommendation to the common council that the street should be paved, furnishing an estimate of the cost as, "Estimated cost, $40,000." It is claimed that this provision of the charter is mandatory, and that a failure to comply with its terms rendered any subsequent action void. Counsel cite, in support of this, *Butler* v. *City of Detroit*, 43 Mich. 552 (5 N. W. 1078); *Mills* v. *City of Detroit*, 95 Mich. 422 (54 N. W. 897).

It is evident that the course taken in the present instance by the board of public works and the common council obviates the difficulties presented in the above cases. The board reported that the cost of such improvement would be $40,000. The city engineer made a detailed estimate of the costs. These matters were laid before the common council before the contract was approved, and apparently were duly considered by it. In *Goodwillie* v. *City of Detroit*, 103 Mich. 287 (61 N. W. 527), it was said:

"The duty of furnishing the estimate is imposed upon the board of public works. The council called upon the board for such estimate; and an estimate having been furnished, and no further particulars having been called for, it must be assumed that the information was sufficiently specific to enable the council to act intelligently."

In *Butler* v. *City of Detroit, supra*, the board of public works made no report as to the expediency of the proposed improvement, nor did it report any estimate of the costs. In *Mills* v. *City of Detroit, supra*, the board made no report whatever as to costs.

3. Section 5, chap. 32, of the revised ordinances of the city, provides that "the advertisement [for bids] shall specify a time and place when and where such bids shall be opened, at which time and place such bids shall be opened by the board of public works in the presence of

such persons as shall choose to attend." The advertisement which was actually published reads as follows: "Sealed proposals will be received at the office of the board of public works, Detroit, Michigan, until Tuesday, September 6, 1898, at 10 o'clock a. m., local time, for furnishing all the labor and material," etc. The advertisement contains no statement that the bids will be opened at any time, or that an opportunity will be afforded to any person interested to inspect them. It is contended that this requirement of the ordinance is jurisdictional, and that the proceedings based upon the advertisement which was actually published are null and void.

Under the statute creating the board of public works, the details relating to the matters of public improvements rest with the board. The advertisement is subject only to the control of the board. The board is required to advertise for proposals and enter into a contract, but the contract does not become valid or binding until approved by the council. The board must determine what the specifications must be. The council can approve or reject them, but has nothing to do with making them. Before a contract can be entered into between the bidder and the board, it must be approved by the council. The proofs show that the bids or proposals for this paving were opened in the office of the board of public works at 10 o'clock a. m., local time, on September 6, 1898, in public, and in the presence of those who tendered bids; that being the time mentioned as the hour up to which bids would be received. The proofs also show that it had always been the custom of the board to open bids at the hour named. We think from this showing that no one was deprived of any right, and it would be a most technical rule to hold that the whole proceeding must fail, and the complainants escape payment for a valuable public improvement by which they are benefited. Whether there was a compliance with the ordinance or not, no one being harmed, the proceedings will not be set aside for that reason.

4. Among the other specifications attached to the contract is the following:

"And, if the contractor shall fail to complete the work by the time specified in the contract, the sum of $25 per day for each and every day thereafter, until such completion, shall be paid to the city of Detroit, through the board of public works, before acceptance of the work."

It appears that the work under the contract was accepted by the board January 3, 1899, and no deduction was made on account of delay, which, it is claimed, amounted to over 30 days. It is claimed that, under these circumstances, the board had no right to accept the work at all, or, at least, that it had no right to charge against the property owners the entire cost of the work, without making any deduction for the penalty provided in the specifications, and that the board had no power to waive the penalty. We think this claim cannot be sustained. The penalty clause in the contract has no relation whatever to the assessment. It is not provided for by law, and it was evidently not intended for the benefit of the abutting property owners, but for the city at large. The proper authorities have passed upon the question, and have accepted the work as satisfactory. The acceptance must be held conclusive. Cooley, Tax'n (2d Ed.), p. 671.

The other questions raised have no force.

The court below was in error in setting the proceedings aside. That decree must be reversed, and a decree entered here dismissing complainants' bill, with costs of both courts.

The other Justices concurred.